UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL ACTION NO. 4:14-CR-221 |
| | § | |
| AARON MICHAEL RAMIREZ | § | |
| | § | |

## MEMORANDUM AND ORDER

Pending before the Court are Defendant's Motion to Dismiss for Failure to Timely Indict (Doc. No. 12)[1]; Motion to Dismiss for Unconstitutionality (Doc. No. 14); and Motion to Suppress (Doc No. 13). After considering all of the parties' arguments, the applicable law, and the record in this case, the Court finds that Defendant's Motions to Dismiss must be **DENIED**. Defendant's Motion to Suppress must be **GRANTED** with respect to his statements as to the location of firearms in his bedroom, and **DENIED** in all other respects.

### I.   BACKGROUND

The Defendant in this criminal action, Aaron Michael Ramirez, has been charged with a felony under 18 U.S.C. § 922(g)(1), criminalizing the possession of firearms by felons. Mr. Ramirez was originally arrested on December 13, 2013 on an unrelated indictment. In the process of executing the arrest warrant, law enforcement officers recovered a rifle and two pistols from Mr. Ramirez's bedroom. The current charges arise from this recovery.

The following facts are uncontested, except as noted. Law enforcement officers executed an arrest warrant at Mr. Ramirez's home on the morning of December 13, 2013. When officers first knocked on the front door of the home, one of the occupants partially opened the door. Officers could see movement at the back of the house. When officers knocked on the back door of the

---

[1] All docket references are to 14-CR-221.

home, Mr. Ramirez's wife opened the door. Mr. Ramirez was immediately removed from the home, handcuffed, and arrested. While Mr. Ramirez was being arrested, his wife was asked to remain in the kitchen under officer supervision. Other officers went upstairs, located Mr. Ramirez's stepson, and brought him to the kitchen. While officers were conducting this sweep of the home, they noticed a rifle case underneath Mr. Ramirez's bed.

When Mr. Ramirez was arrested, he was dressed in boxer shorts. Officers escorted him back into his bedroom to obtain clothing and shoes for transport to jail. When the officers and Mr. Ramirez were in his bedroom, one of the officers told Mr. Ramirez that officers had seen the rifle case underneath the bed. The officer then asked if there were anything else[2] in the bedroom that the officers needed to be concerned about. Mr. Ramirez told the officers where a rifle and two pistols were located in the bedroom. Officers retrieved the firearms. Upon seeing this retrieval, Mr. Ramirez stated, "What is going to happen to my guns? Those were my father's."

## II.    ANALYSIS

As each of the motions raises different legal issues, the relevant legal standards will be addressed in turn.

### A. Motion to Dismiss for Failure to Timely Indict

The Speedy Trial Act states, in relevant part:

> [a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges.

18 U.S.C. 3161(b). Mr. Ramirez claims that the government violated the Speedy Trial Act because it failed to indict him on this charge within thirty days of his December 2013 arrest. He

---

[2] It is unclear from the briefing whether the officer asked specifically about the presence of firearms, but the exact wording of his inquiry does not affect the analysis.

argues that his arrest date triggers the speedy trial clock on this charge because the record of his arrest establishes his identity, and he was subject to prosecution under section 922(g)(1) as of that date.

The Court is unpersuaded by Mr. Ramirez's argument because the charge he currently faces was not the basis of his December 2013 arrest. The Fifth Circuit has held that an arrest on one charge does not trigger speedy trial rights as to other charges subsequently filed. *U.S. v. Giwa*, 831 F.2d 538, 541 (5th Cir. 1987). The Fifth Circuit found that "[t]he [Speedy Trial] Act requires dismissal of *only* those charges contained in the original complaint." *Id.* (emphasis in original). Thus, Mr. Ramirez's arrest on an unrelated indictment did not trigger the 30-day clock with respect to his indictment for possession of firearms as a felon, even though the firearms were recovered during that arrest. As the instant charge is a separate offense that was subsequently filed, the motion to dismiss for failure to timely indict must be denied.

### B. Motion to Dismiss for Unconstitutionality

Mr. Ramirez claims that section 922(g)(1) is unconstitutional as applied to him on four grounds: (1) the Second Amendment; (2) the Privileges and Immunities Clause; (3) preemption; and (4) the Commerce Clause.

#### 1. Section 922(g) is Constitutional Under the Second Amendment

Mr. Ramirez argues that felon-in-possession laws violate the Second Amendment, as it has been interpreted by the U.S. Supreme Court in *D.C. v. Heller*. 554 U.S. 570 (2008). Mr. Ramirez's argument is undermined by *Heller*'s own language. The *Heller* Court explicitly noted that "nothing in our opinion should be taken to cast doubt on the longstanding prohibitions on the possession of firearms by felons." *Heller*, 554 U.S. at 626. Further, the Fifth Circuit rejected Mr. Ramirez's argument in *U.S. v. Anderson*, holding that section 922(g) does not violate the Second

Amendment. 559 F.3d 348, 352 (5th Cir. 2009). The Fifth Circuit considered *Heller* and found no basis for revisiting its prior ruling on the constitutionality of section 922(g). *Id.*; *see also U.S. v. Darrington*, 351 F.3d 632, 634 (5th Cir. 2003) (holding section 922(g) constitutional). Mr. Ramirez's argument is foreclosed by Fifth Circuit precedent.

    2. <u>Section 922(g) is Constitutional under the Privileges and Immunities Clause</u>

Mr. Ramirez also argues that the Privileges and Immunities Clause renders section 922(g) unconstitutional. This clause is traditionally invoked where a state statute or regulation discriminates against out-of-state citizens' fundamental rights, or impedes their ability to perform essential activities. Mr. Ramirez is unable to argue that section 922(g) discriminates against him on the basis of his Texas citizenship. Instead, he invokes this clause simply to reiterate his fundamental right to keep and bear arms under the Second Amendment. This is merely a repackaging of the argument discussed above, and similarly is not grounds for dismissal of the indictment.

    3. <u>Section 922(g) as Applied to Mr. Ramirez is Not an Unlawful Preemption of State Law</u>

Mr. Ramirez also alleges that, in enacting Section 922(g), Congress meant to "supplement, not preempt, the State's gun possession laws." Doc. No. 14 at 8. Mr. Ramirez's preemption argument is not meritorious, however, because he is not allowed to possess firearms under either Texas or federal law. Mr. Ramirez is correct that there is a general presumption against federal preemption of state laws. This presumption is explicitly acknowledged in 18 U.S.C. 927.[3] Mr.

---

[3] "No provision of this chapter shall be construed as indicating an intent on the part of the Congress to occupy the field in which such provision operates to the exclusion of the law of any State on the same subject matter, unless there is a direct and positive conflict between such provision and the law of the State so that the two cannot be reconciled or consistently stand together." 18 U.S.C. § 927.

4

Ramirez is also correct that 18 U.S.C. 921(a)(20)[4] was added to the Federal Gun Control Act to give effect to state statutes that fully restore the civil rights of convicted felons. Mr. Ramirez has not, however, had his civil rights fully restored by Texas. *See U.S. v. Thomas*, 991 F.2d 206, 215 (5th Cir. 1993) (discussing how a felon's civil rights may be restored under the Texas Penal Code). He is unable to identify any state law that permits him to possess firearms. As there is no state law grant of a right of possession, Mr. Ramirez is prohibited from possessing a firearm under both Texas and federal law. Thus, there is no conflict between federal and state law to analyze under the preemption doctrine.

    4. <u>Section 922(g) is Constitutional As Applied to Mr. Ramirez Under the Commerce Clause</u>

Finally, Mr. Ramirez argues that section 922(g) is unconstitutional because its application in this instance exceeds Congress' authority under the Commerce Clause. Specifically, Mr. Ramirez contends that the firearms found in his bedroom were gifts from his father, and thus "had absolutely no affect [sic] on interstate or foreign commerce." Doc. No. 22 at 14. Mr. Ramirez analogizes to *U.S. v. Lopez*, where the U.S. Supreme Court held that the Gun-Free School Zones Act "contain[ed] no jurisdictional element which would ensure, through case-by-case inquiry, that the firearm possession in question affects interstate commerce." 514 U.S. 549, 561 (1995).

The Fifth Circuit has held, however, that the Court's reasoning in *Lopez* is inapplicable to section 922(g)(1), the section at issue here. *U.S. v. Rawls*, 85 F.3d 240 (5th Cir. 1996). The threshold for demonstrating an effect on interstate commerce is low; "evidence that a gun was

---

[4] "What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms." 18 U.S.C. § 921(a)(20).

manufactured in one state and possessed in another state is sufficient to establish a past connection between the firearm and interstate commerce." *U.S. v. Pierson*, 139 F.3d 501, 504 (5th Cir. 1998). Since the government alleges in its indictment that the firearms in question "had been shipped in interstate and foreign commerce," Doc. No. 1 at 1, it has satisfied the jurisdictional requirement.

### C. Motion to Suppress Evidence

Mr. Ramirez moves to suppress all statements made by him, his wife, and his stepson during his arrest in December 2013.

1. Any Statements Made by Mr. Ramirez's Wife and Stepson Should Not Be Suppressed Under the Fourth or Fifth Amendment

Mr. Ramirez lacks standing to challenge the seizure of his wife and stepson, or any statements made by his wife and stepson to the police. *See Rakas v. Illinois*, 439 U.S. 128, 133-4 (1978) ("Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted."). The Fifth Amendment right against self-incrimination is necessarily personal, and Mr. Ramirez does not have a constitutional right against incrimination by the statements of others.

2. The Protective Sweep Was Constitutional Under the Fourth Amendment

Mr. Ramirez argues that the police "exceeded the purpose of their warrantless entry" in conducting a protective sweep of the premises. Doc. No. 13 at 3. This challenge is meritless. The police may conduct a protective sweep of the relevant premises, before or after an arrest, "provided the police possess a reasonable suspicion, based on specific and articulable facts, that another person may be on the premises and pose a danger to the police." *U.S. v. Virgil*, 444 F.3d 447, 451(5th Cir. 2006). Such a sweep "may be no more than a cursory inspection of those spaces where a person may be found and may last[ ] no longer than is necessary to dispel the

reasonable suspicion of danger." *Id.* (internal quotations and citation omitted). For the purposes of a protective sweep, it is immaterial that a suspect was arrested immediately outside of his or her home. See *U.S. v. Wilson*, 360 F.3d 231, 238 (5th Cir. 2002) ("We extend the warrantless protective sweep authority to the inside of a suspect's house even if the arrest is made near the door but outside the lodging if the arresting officers have reasonable grounds to believe that there are other persons present inside who might present a security risk.") (internal citation and quotations omitted).

The officers had the reasonable suspicion necessary to conduct a protective sweep of Mr. Ramirez's home. At the point of arrest, officers were aware that there was at least one other person in the home with Mr. Ramirez. It is reasonable that officers with this knowledge would sweep the premises to ensure that there were no other individuals on-site who posed a threat to law enforcement. Thus, the protective sweep was justified by a reasonable, articulable suspicion and did not exceed the officers' authority under the Fourth Amendment.

   3. <u>The Warrantless Entry Into the Home to Obtain Additional Clothing Was Constitutional Under the Fourth Amendment</u>

Mr. Ramirez also alleges that the officers exceeded their authority by entering his bedroom to obtain clothes and shoes for transport to jail. This challenge is foreclosed by Fifth Circuit precedent; obtaining clothing for an arrestee who is dressed only in boxer shorts constitutes exigent circumstances and justifies a warrantless entry. See *Wilson*, 306 F.3d at 241 ("Even without considering any issue of "common decency" in transporting a person in underwear to a jailhouse or police station, we hold that in a situation such as this, the potential of a personal safety hazard to the arrestee places a duty on law enforcement officers to obtain appropriate clothing."). As in *Wilson*, officers' warrantless entry into Mr. Ramirez's bedroom was justified by the need to obtain clothing and shoes.

4. <u>Mr. Ramirez's Statement(s) to the Police About the Location of the Firearms Should Be Suppressed Under the Fifth Amendment</u>

The right against self-incrimination under *Miranda v. Arizona* is triggered at the point of custodial interrogation, defined as "questioning initiated by law enforcement officers after a person has been taken into custody." *U.S. v. Gonzales*, 121 F.3d 928, 939 (5th Cir. 1997) (*overruled on other grounds by U.S. v. O'Brien*, 560 U.S. 218 (2010)). Neither Mr. Ramirez nor the government suggests that Mr. Ramirez was warned of his *Miranda* rights at any relevant point during his arrest. Statements made in violation on *Miranda* may be suppressed, unless certain exceptions apply.

The first statement Mr. Ramirez challenges is his response to an officer's question about the presence of firearms in the bedroom. Mr. Ramirez responded to the officer's question after he was under arrest and while he was in his bedroom to obtain clothes and shoes. This statement was taken in violation of Mr. Ramirez's Fifth Amendment rights, as it was obtained during a custodial interrogation. Mr. Ramirez was in custody at the time as he was handcuffed, under officer supervision, and no longer free to leave. *See Yarborough v. Alvarado*, 541 U.S. 652, 653 (2004) (noting that, in determining whether an individual is in custody, a court must examine the circumstances surrounding the interrogation and whether a reasonable person would have felt free to terminate the interrogation and leave). He made the statement, identifying the location of the rifle and pistols, in response to a direct question by law enforcement. Since the police should have known that the question was reasonably likely to evoke an incriminating response, it constitutes interrogation. *See Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). As no exigent public safety concerns justified the questioning, Mr. Ramirez's statement should be suppressed as a violation of the Fifth Amendment.

The Supreme Court has, however, held that the physical fruits of voluntary statements taken in violation of *Miranda* are admissible. *U.S. v. Patane*, 542 U.S. 630 (2004). Thus, although Mr. Ramirez's answer to the officers' question must be suppressed, the firearms recovered as the result of his voluntary statement are not poisoned by violation.

5. <u>Mr. Ramirez's Statement Upon Seeing the Firearms Recovered Should Not Be Suppressed Under the Fifth Amendment</u>

Mr. Ramirez also moves to suppress the statement he made in response to seeing the firearms in his bedroom recovered by the police. This statement is not a violation of *Miranda* because it was not made in response to questioning initiated by law enforcement. *Gonzales*, 121 F.3d at 940. Mr. Ramirez initiated the statement himself, and was not responding to words or acts by law enforcement that was designed to evoke an incriminating response. Thus, although Mr. Ramirez was in custody, his statement was not made in response to interrogation and is not covered by *Miranda*.

### III. CONCLUSION

Accordingly, the Court finds that the Motion to Dismiss for Failure to Timely Indict must be **DENIED**. The Court finds that the Motion to Dismiss for Unconstitutionality must be **DENIED**. The Court finds that Motion to Suppress must be **GRANTED** in part, and **DENIED** in part.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the second day in September, 2014

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

The Supreme Court has, however, held that the physical fruits of voluntary statements taken in violation of *Miranda* are admissible. *U.S. v. Patane*, 542 U.S. 630 (2004). Thus, although Mr. Ramirez's answer to the officers' question must be suppressed, the firearms recovered as the result of his voluntary statement are not poisoned by violation.

5. <u>Mr. Ramirez's Statement Upon Seeing the Firearms Recovered Should Not Be Suppressed Under the Fifth Amendment</u>

Mr. Ramirez also moves to suppress the statement he made in response to seeing the firearms in his bedroom recovered by the police. This statement is not a violation of *Miranda* because it was not made in response to questioning initiated by law enforcement. *Gonzales*, 121 F.3d at 940. Mr. Ramirez initiated the statement himself, and was not responding to words or acts by law enforcement that was designed to evoke an incriminating response. Thus, although Mr. Ramirez was in custody, his statement was not made in response to interrogation and is not covered by *Miranda*.

### III. CONCLUSION

Accordingly, the Court finds that the Motion to Dismiss for Failure to Timely Indict must be **DENIED**. The Court finds that the Motion to Dismiss for Unconstitutionality must be **DENIED**. The Court finds that Motion to Suppress must be **GRANTED** in part, and **DENIED** in part.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the second day in September, 2014

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE